**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:18-cr-00384-APG-EJY |
| Plaintiff | **Order (1) Denying Demecia Shontres Washington's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 and (2) Granting her Motion to Supplement** |
| v. | |
| DEMECIA SHONTRES WASHINGTON, | |
| Defendant | [ECF Nos. 208, 212] |

Demecia Shontres Washington was convicted of conspiracy to commit sex trafficking, sex trafficking, conspiracy to transport for prostitution or other criminal sexual activity, transportation for prostitution or other criminal sexual activity, conspiracy to sexually exploit children, sexual exploitation of children, and distribution of child pornography. ECF No. 141.  I sentenced her to a total of 216 months imprisonment. ECF No. 162 at 3.  Washington appealed, and the Ninth Circuit affirmed. ECF No. 187 at 4.  The Supreme Court of the United States denied Washington's petition for a writ of certiorari on January 8, 2024. *Washington v. United States*, 144 S. Ct. 611 (2024).

Washington now seeks to vacate her convictions and sentence under 28 U.S.C. § 2255, raising claims of conflict of interest, actual innocence, fraud, vindictive prosecution, double jeopardy, and ineffective assistance of counsel.  She asks for a change of venue based on my alleged bias or prejudice against her.  The government responds that none of the grounds for relief has merit and, in any event, Washington's § 2255 motion is untimely.  Almost seven months after filing her § 2255 motion, Washington moved to supplement, adding new authority to support her claims.  I grant Washington's motion to supplement and consider the evidence she

presents there. I deny the § 2255 motion because it is untimely, decline to hold an evidentiary hearing, and deny a certificate of appealability.

**I. Washington fails to show a basis for recusal.**

The grounds for recusal are controlled by 28 U.S.C. § 144 and § 455. Under § 144, a request for recusal must be accompanied by an affidavit stating "facts and the reasons for the belief that bias or prejudice exists." Under § 455(a), a federal judge must recuse "in any proceeding in which his impartiality might reasonably be questioned." The obligations set forth in § 455 are "self-enforcing on the part of the judge." *United States v. Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980). Section 455(a) requires disqualification "to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice, but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis omitted). The test for disqualification is whether a reasonable person knowing all the circumstances "might reasonably . . . question[]" the judge's impartiality. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 714 (9th Cir. 1990). Just as judges are obligated to recuse themselves when their impartiality may reasonably be questioned, judges also are obligated to refrain from recusal when there is no basis for disqualification. *See N.Y.C. Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 980-81 (7th Cir. 1986).

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion, [and] opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky*, 510 U.S. at 555. "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

2

Washington fails to show grounds for my recusal under either § 144 or § 455. Washington submitted an affidavit with her § 2255 motion but fails to identify any facts or reasons for my bias or prejudice under § 144. *See* ECF No. 208 at 30-31.  Moreover, the grounds identified in her motion are insufficient to show good cause for recusal.

Washington contends that I prejudiced her "by making remarks that shamed [her] on the record" and by making "many prejudicial nonfactual statements against [her] without the government being required to prove a single claim." *Id.* at 18, 20.  She does not identify what statements she is referring to, but at other points in her motion Washington references my statements during her sentencing hearing.  There, I discussed my analysis under 18 U.S.C. § 3553(a):

> There's another set of factors I have to consider when I impose sentence, and those are contained in a statute known as 18 U.S.C. section 3553(a).  That requires me to take into account the nature and circumstances of the crimes you've committed, and I have to consider your personal history and characteristics.
>
> And the sentence that I impose has to do a number of things.  That sentence has to reflect how serious these crimes are.  It has to promote respect for the law.  It has to provide just and appropriate punishment.
>
> . . .
>
> Based upon that and those findings, I do find that the 3553(a) factors are—are important and weigh in significantly here.  With regard to the seriousness of the crimes you've committed, these—these are heinous crimes.  You took a 15-year-old girl and helped her to sell her body so she can make money.
>
> . . .
>
> I am especially bothered by what you did to this victim after you trafficked her. Not only did she sell her body to make money for you and him, when she finally became too much trouble, you left her stranded in Vegas with no money, no clothes, no way home.
>
> . . .
>
> But it seems to me heartless and depraved to do that to a girl who had been taken and trafficked in that way, and that does justify a somewhat lengthy sentence.

ECF No. 169 at 29-33.  Despite these comments, I varied downward from the Sentencing Guidelines when sentencing Washington because of policy concerns and the fact that these were Washington's first felony offenses. *Id.* at 34-36.

My comments do not support a basis for my recusal from Washington's collateral appeal. My statements about the seriousness of Washington's crimes show my analysis under § 3553, which is required under the law. *United States v. Andreis*, 802 F. App'x 272, 274 (9th Cir. 2020). My comments were made during a judicial proceeding, were not derived from an extrajudicial source, and did not show deep-seated favoritism or antagonism that would make fair judgment impossible. *See Liteky*, 510 U.S. at 555.  No reasonable person knowing all the circumstances would reasonably question my impartiality in this case.  I therefore deny Washington's request for my recusal and a change of venue.

**II.  Washington's § 2255 motion is untimely, and thus I deny it.**

The one-year limitation period for a § 2255 motion begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).  A "conviction is final in the context of habeas review when 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.'" *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001) (quoting *Griffith v. Ky.*, 479 U.S. 314, 321 n.6 (1987)).  Here, the judgment became final on January 8, 2024, when Washington's petition for certiorari was denied.  Washington signed her § 2255 motion on August 29, 2025, over seven months beyond the one-year limitations period. ECF No. 208 at 29.

Washington contends the limitation period should be tolled because of her unfamiliarity with the law, new cases or laws, her prior counsel not providing her case file, and actual innocence.  The government argues these reasons do not excuse her untimeliness.

Equitable tolling is unavailable in most cases and only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (simplified).  Washington argues she is "not trained in how to move through the maze that is the legal world." ECF No. 208 at 12.  But a party's pro se status and unfamiliarity with the law do not excuse failure to comply with the statutory time limitation. *Johnson v. United States*, 544 U.S. 295, 311 (2005).  Otherwise, almost every prisoner would be entitled to equitable tolling.

Washington does not state what new cases or laws warrant tolling here.  As the government points out, the most recent case Washington cites in her motion is from 2020, which was before her trial. *See* ECF No. 210 at 9-10.  So I reject Washington's argument that new cases or laws warrant tolling.

Washington claims she "had to fight with defense counsel for her case/work files and evidence." ECF No. 208 at 12.  She does not elaborate more than this nor explain why this fact prevented her from filing a timely § 2255 motion.  Washington filed two motions to compel her prior counsel to turn over her case file, one on July 14, 2025 and the other on August 11, 2025.  ECF Nos. 203; 206.  Both were filed after her one-year time limitation period had expired.  Although she stated in those motions that she had requested her file from counsel, she did not state when she made those requests.  Section 2255 imposes a requirement that Washington act with "due diligence." *See* 28 U.S.C. § 2255(f)(4).  "[D]iligence can be shown by prompt action on the part of the petitioner as soon as [she] is in a position to realize that [she] has an interest in challenging the prior conviction . . . ." *Johnson*, 544 U.S. at 308.  By filing motions to compel over six months after her statutory cutoff period, Washington has not shown due diligence.  Nothing else in the record or in Washington's § 2255 motion shows she acted with due diligence

or warrants tolling her claims because of difficulties obtaining her case file from her previous attorney.

A "credible actual innocence claim constitutes an equitable exception" to a collateral appeal time limitation. *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). The petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The *Schlup* exception applies only in the "extraordinary case" and requires the petitioner to "show that it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence." *Id.* at 324, 327. "To be credible, such a claim requires petitioner to support [her] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. "[W]here post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir. 2002). Impeachment evidence "can demonstrate actual innocence, where it gives rise to 'sufficient doubt about the validity of the conviction.'" *Id.* at 676 (quoting *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997)).

Washington mentions several pieces of evidence that may support her actual innocence argument: (1) a witness at the hotel where Washington was with her accomplice, Jimmy, and the victim, (2) video footage from the same hotel, (3) a witness who could testify that Washington had never been to Las Vegas, (4) video footage from a casino, and (5) video footage from a Jack in the Box. ECF No. 208 at 15, 18, 20, 22, 28. Even if these pieces of evidence show what

Washington claims they do (e.g. her lack of presence at a certain casino or Jack in the Box), none could affirmatively prove Washington's innocence of the seven counts for which she was convicted.  Though this evidence may bolster Washington's story and undercut the credibility of the witnesses who testified against her, it is insufficient to create doubt about the validity of her conviction.

Washington fails to provide sufficient information about her proposed new evidence from which to judge its credibility.  For instance, she does not provide the names of any proposed witnesses, affidavits from them stating what they would testify to, or any information about Washington's relationship with her alleged Las Vegas alibi witness.  Washington does not explain why she thinks the hotel and Jack in the Box have cameras, what parts of the respective properties they film, or whether the recordings are still saved.  She does not name the casino. She does not state the relevant time periods she would present video evidence from.  The vague and conclusory nature of the evidence Washington presents reduces its weight. *Cf. Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). *Compare Carriger*, 132 F.3d at 478 (ordering a new trial after the petitioner presented a sworn statement from a third party confessing to the crime for which the petitioner was convicted), *with United States v. Shields*, No. 12-CR-00410-BLF-1, 2020 WL 353550, at *7 (N.D. Cal. Jan. 21, 2020) (rejecting petitioner's actual innocence claim where he attached no exhibits to his § 2255 motion and did not identify "any facts regarding the transactions giving rise to [his] conviction that could not have been proffered at trial," like "new medical evidence or [a] new confession to [the] crime by another").

The evidence presented against Washington during her trial was significant. The government presented phone records, text messages, internet search records, GPS evidence, email records, and photographic evidence, and it used this evidence to undermine Washinton's story. *See* ECF Nos. 147; 175 at 123-39. Washington testified during her trial and was able to present her version of events. *See* ECF Nos. 150 at 13-119; 175 at 7-33. The government presented numerous witnesses, including the victim. Washington's attorney attacked the victim's credibility and bolstered Washington's credibility. ECF No. 175 at 103-19. The evidence Washington now proposes does not move the needle and create doubt about the validity of her conviction.

Washington argues that some of this new evidence will show she had never been to Las Vegas. ECF No. 208 at 15, 18. It is unclear how an unnamed witness and casino camera could show Washington had never been to Las Vegas. But even more problematic for Washington, her presence in Las Vegas was not a part of the government's case against her. Washington testified during trial that she had never been to Las Vegas before. ECF No. 150 at 66. The government conceded she was not in Las Vegas when Jimmy was there with the victim. ECF No. 175 at 91, 98 (discussing in the government's closing argument that only "Daddy and the victim" were in Las Vegas and although Washington was not "physically present," she provided financial assistance). The government argued that Washington appeased the victim by paying her family in Dallas while Jimmy trafficked the victim to Las Vegas. *Id.* at 98. Thus, new evidence that Washington was never in Las Vegas does not undermine her conviction and may actually support the government's theory of the case.

Washington's contention that prior to the hotel room incident she "never met" or had any involvement with the victim is belied by the evidence at trial. ECF No. 208 at 15, 19, 22, 24.

Washington's own trial testimony flatly contradicts what she claims her new evidence would show.  Currently, she argues that the hotel witness and video footage would show she had no involvement with Jimmy and arrived at the hotel after him. ECF No. 208 at 15.  But at trial she testified that when she arrived at the hotel, she did not know where he was initially, so she booked a room, called and gave him the room number, and he arrived at her room later. ECF No. 150 at 39-40.  This contradiction undermines Washington's credibility and further supports rejecting her actual innocence claim. *Shah v. United States*, 878 F.2d 1156, 1158-59 (9th Cir. 1989) (questioning the petitioner's credibility where his allegations contradicted his previous statements in court); *United States v. Quiroz*, 706 F. App'x 423, 424 (9th Cir. 2017) (denying petitioner's actual innocence claim where the new evidence was "contradicted by [the petitioner's] own trial testimony, the testimony of other witnesses, and the documentary evidence").

Because Washington cannot show actual innocence or any other way around her untimely § 2255 motion, I deny it because she failed to file the motion within one year of her conviction becoming final.

**III.  Besides being untimely, there are several other problems with Washington's motion.**

Even if Washington's § 2255 motion was timely, her motion still would fail due to either procedural default or on its merits.  She argues that the victim in this case committed perjury and was not a minor, that her convictions overlap and thus violate double jeopardy, and that the government selectively and vindictively prosecuted her.

These claims are procedurally defaulted because she did not raise them on her direct appeal.  "[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  A

federal court may grant habeas relief based on actual innocence "even in the absence of a showing of cause for [a] procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  As already discussed, Washington's actual innocence argument fails.  Washington concedes she failed to raise her claims on direct appeal. ECF No. 208 at 4, 6, 7, 9, 10; *see also* ECF No. 187.

These claims also fail on the merits.  Most of Washington's accusations (*e.g.*, perjury by certain witnesses) are conclusory. ECF No. 208 at 20, 22, 28.  She disputes that her victim was a minor because the victim was a mother and paid taxes, but Washington provides no law for such an argument and the jury was instructed on the definition of a minor. ECF No. 138 at 24. Regarding her double jeopardy claim, Washington argues she was sentenced "to multiple counts that all have the same elements of each other and . . . charged with multiple counts for the same conduct." ECF No. 208 at 23.  But the jury instructions show this contention is wrong. ECF No. 138 at 20-37.  Washington claims vindictive and selective prosecution because she refused to accept a plea deal or cooperate with the government. ECF No. 208 at 15, 24.  But this claim is conclusory and fails to raise direct evidence or even a presumption of vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 380-81 (1982) (holding that a defendant must show either direct evidence of a vindictive motive or establish a presumption of vindictiveness); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1167, 1171 (9th Cir. 1982) (holding that a presumption of vindictiveness requires a "very real likelihood of actual vindictiveness," and a "sequence of events is not enough").  Washington's contention that she "was never shown the elements of the charges against her by defense counsel or the court" is meritless in light of her arraignment transcript. ECF Nos. 208 at 24; 182 at 4-6.  To the extent Washington argues her counsel was ineffective for failing to raise these claims, her argument fails because a meritless claim cannot form the basis for an ineffective assistance of counsel claim. *See Shah*, 878 F.2d at 1162 ("The

failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." (quotation omitted)).

Washington also contends her counsel was ineffective for failing to call the hotel witness and the witness who would testify she had never been to Las Vegas and for failing to present the video footage from the hotel, casino, or Jack in the Box.[1]  To prevail on a claim for ineffective assistance of counsel under § 2255, Washington must show counsel's performance was deficient and that counsel's deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Attorney performance is evaluated under an objective standard of "reasonably effective assistance." *Id.* at 687-88.  I review an ineffectiveness claim against the backdrop of the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Stokley v. Ryan*, 659 F.3d 802, 811 (9th Cir. 2011) (quotation omitted).  And an attorney's "strategic choices" are granted "a heavy measure of deference" and are "virtually unchallengeable" if they were "made after thorough investigation of law and facts." *Strickland*, 466 U.S. at 690-91.

To establish prejudice, Washington must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The movant thus does not prove prejudice by listing the things she thinks her attorney should have done, and then speculating that, had he done them, there might have been a different outcome.  Rather, the movant must state the specific facts that, but for counsel's deficient performance, likely would have produced a more favorable result. *James v. Borg*, 24

---

[1] This claim is not procedurally defaulted because ineffective assistance of counsel claims need not be raised on direct appeal. *Massaro*, 538 U.S. at 509.

11

F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008) ("Gonzalez does not contend that he actually suffered from a mental illness; he merely argues that if tests had been done, and if they had shown evidence of some brain damage or trauma, it might have resulted in a lower sentence.  Such speculation is plainly insufficient to establish prejudice." (emphasis omitted)).

The decisions by Washington's trial counsel regarding which witnesses and evidence to present are strategic decisions, and therefore I view them with substantial deference. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision . . . .").  Washington does not explain why it was unreasonable for her attorney not to present her newly proposed evidence.  Instead, she makes only conclusory allegations.  Further, Washington's vague descriptions of the witnesses and video footage do not support an ineffective assistance of counsel claim. *See Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting an ineffective assistance of counsel claim for failing to interview or call an alleged alibi witness where there was no evidence that the witness existed other than the petitioner's self-serving statements or that the witness would have provided helpful testimony for the defense).  Washington has not shown that her attorney's strategic decisions on how to present her case fell below an objective standard of reasonableness.

Washington is also unable to show prejudice from her attorney's decisions.  As already explained, Washington's presence in Las Vegas was not part of the government's case, so she is not prejudiced by her attorney's decision not to put on additional evidence that she was not in Las Vegas.  Additionally, Washington testified and was able to present her story of what

happened at the hotel. The fact that there is a contradiction between her trial testimony and what she now claims the evidence her attorney failed to present would show undermines her prejudice argument. *See Shah*, 878 F.2d at 1158-59.

**IV. I grant Washington's motion to supplement.**

Washington's motion to supplement appears to be an untimely reply brief to her § 2255 motion. In deference to Washington's pro se status, I grant her motion to supplement. I have considered the contents of her supplement when ruling on her § 2255 motion.

**V. I deny Washington's request for an evidentiary hearing.**

I need not hold an evidentiary hearing because Washington's claims are untimely, conclusory, or belied by the record. *See Shah*, 878 F.2d at 1161 ("Mere conclusory allegations do not warrant an evidentiary hearing."); *Quiroz*, 706 F. App'x at 424 (holding the district court did not abuse its discretion in denying an evidentiary hearing because the petitioner's new evidence was "not new or was unreliable").

**VI. I deny Washington a certificate of appealability.**

To appeal this order, Washington must receive a certificate of appealability from a circuit or district judge. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22-1(a). To obtain this certificate, Washington "must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted); *see* 28 U.S.C. § 2253(c)(2). Reasonable jurists could not debate that Washington has failed to show she is entitled to relief. I therefore deny her a certificate of appealability.

## VII.  Conclusion

I THEREFORE ORDER that defendant Demecia Shontres Washington's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 **(ECF No. 208) is DENIED**.

I FURTHER ORDER that Washington's motion to supplement **(ECF No. 212) is GRANTED**.

I FURTHER ORDER that Washington is denied a certificate of appealability.  She may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Local Rule 22-1.  To do so, she must file a timely notice of appeal.

I FURTHER ORDER the clerk of court to enter a separate civil judgment denying Washington's § 2255 motion.  The clerk will file this order and the civil judgment in this case and in the related civil case number 2:25-cv-01741-APG, and then close that case and this case.

DATED this 21st day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

14